**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**MARY M.,**

        **Plaintiff,**

**vs.**                                                    **CIVIL ACTION NO. 2:23-CV-00444**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER**
**OF SOCIAL SECURITY,**

        **Defendant.**


**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

        This is an action seeking review of the final decision of the Acting Commissioner of Social

Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II

of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered June 22, 2023 (ECF No. 2),

this case was referred to the undersigned United States Magistrate Judge to consider the pleadings

and evidence, and to submit proposed findings of fact and recommendations for disposition

pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief

in Support of Complaint and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos.

5, 6)

        Having fully considered the record and the arguments of the parties, the undersigned

respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request

for entry of an award or remand (ECF No. 5), **GRANT** the Defendant's request to affirm the

1

decision of the Commissioner (ECF No. 6); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for DIB on March 10, 2021 alleging disability beginning February 11, 2020 due to degenerative disc disease in her lower back, anxiety, depression, GERD, IBS, PTSD, osteoarthritis, limited motion in her left ankles, bone spurs in both ankles, "slight scoliosis", "possible fibromyalgia", an abnormal gait because of her left ankles issues, and being unable to stand for more than five minutes. (Tr. at 18, 287, 328) Her claim was initially denied on May 22, 2021 and upon reconsideration on December 16, 2021 (Tr. at 18, 190-194, 196-200). Thereafter, the Plaintiff filed a written request for hearing on February 10, 2022 (Tr. at 201-202).

An administrative hearing was held on October 27, 2022 before the Honorable Nathan Brown, Administrative Law Judge ("ALJ") (Tr. at 40-62). On December 15, 2022, the ALJ entered an unfavorable decision (Tr. at 15-39). On April 27, 2023, the Appeals Council denied the Plaintiff's Request for Review, thus, the ALJ's decision became the final decision of the Acting Commissioner. (Tr. at 1-7)

On June 21, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed a Brief in Support of her Complaint (ECF No. 5); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 6), to which the

Plaintiff filed her Reply Brief (ECF No. 7). Consequently, this matter is fully briefed and ready for resolution.

## Plaintiff's Background

The Plaintiff was 48 years old as of the alleged onset date, and 51 years old at the time of the unfavorable decision, therefore she was initially considered a "younger person" and then transitioned into a "person closely approaching advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(c), (d). (Tr. at 166) She served in the United States Navy for four years and was honorably discharged in 1994 (Tr. at 316, 320) and has a combined disability rating of 80% from service-connected conditions: post-traumatic stress disorder; scraped cervix complications from a hysterectomy; and chronic left ankles sprain with arthritis (Tr. at 320). She had completed two years of college (Tr. at 329), and last worked as a customer service representative and operations specialist for a tour company (Tr. at 329-330, 335).

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant

3

is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through September 30, 2025. (Tr. at 21, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity since the alleged onset date of February 11, 2020. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: bilateral plantar fasciitis and pes planus; degenerative changes to the feet; bilateral sinus tarsi syndrome of the ankles; left ankle osteoarthritis; lumbar degenerative disc disease; obesity; asthma; and bilateral shoulder tendonitis. (Id., Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 24, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to

perform light work except

> she can operate foot controls bilaterally frequently. She can frequently lift overhead bilaterally. The claimant can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance frequently; and stoop, kneel, crouch, and crawl occasionally. The claimant can work at unprotected heights and around moving mechanical parts occasionally. She can frequently work in weather, in humidity and wetness, in atmospheric conditions, in extreme cold or extreme heat, and in vibration. She can frequently work in humidity and wetness. She can also operate a motor vehicle frequently.

(Tr. at 25, Finding No. 5)

At step four, the ALJ found the Plaintiff is capable of performing her past relevant work as an insurance clerk/customer service representative and a travel clerk. (Tr. at 33, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability since February 11, 2020 through the date of the decision. (Tr. at 34, Finding No. 7)

### Plaintiff's Challenges to Commissioner's Decision

The Plaintiff argues that that ALJ's fourth step finding is contrary to law because no mental limitations were included in his RFC determination, or provide an explanation why they were omitted, thus frustrating meaningful judicial review. (ECF No. 5 at 3-14) In addition, the ALJ failed to consider a medical source opinion, specifically, from Mabel Wright, PA-C, which concerned the Plaintiff's VA disability benefits determination. (Id. at 14-15) Because of these errors, the Plaintiff asks the Court to reverse and remand for an outright award of benefits, or for further administrative proceedings. (Id. at 15)

In response, the Commissioner contends that the ALJ reasonably explained why the Plaintiff's non-severe mental impairments did not result in work-related functional limitations, noting the ALJ's analysis set forth in the RFC assessment, and how the medical opinion evidence

supported that conclusion. (ECF No. 6 at 10-15) Regarding Ms. Wright's opinion, the Commissioner argues that not only does it not contain limitations applicable to the jobs the Plaintiff can still perform, which are sedentary, but also, the Plaintiff cannot show how its omission would have changed the outcome of this case. (Id. at 15-16)  The Commissioner asks this Court to affirm the final decision because it is supported by the substantial evidence. (Id. at 17)

In her reply, the Plaintiff reiterates her arguments that the ALJ never explained how the Plaintiff's mild limitations in the four broad areas of mental functioning did not prevent her from performing past work, therefore meaningful review has been denied to this Court. (ECF No. 7 at 1-4). The Plaintiff maintains that remand is necessary because the ALJ failed to evaluate a medical source opinion as required under the regulations, regardless of the Commissioner's argument that it would not have changed the outcome of the case (Id. at 4)

**Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

**The Medical Record:**

Mental Impairments:

In early February 2020, the Plaintiff had a mental health appointment where she reported depression, but on observation, her speech was normal with normal thought content, intact memory, good insight and judgment, and no hallucinations, delusions, or flight of ideas (Tr. at

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

761-762). She was instructed to treat with medication and follow-up later that same month (Id.). At that appointment, the Plaintiff reported no significant symptoms over the past four to six weeks, and she had normal cognitive functioning, appearance, speech, thought process, thought content, and perception, as well as fair/adequate insight and judgment (Tr. at 755-756). She had another appointment in March 2020, where despite a depressed mood and affect, she had no issues with her thoughts, memory, judgment, or insight (Tr. at 738). Following a medication change, in April 2020, the Plaintiff reported that her new medication "has been helpful in improving her mood and decreasing her anxiety and PTSD symptoms" and "denie[d] any crying spells, anger outbursts, or panic attacks" (Tr. at 733-734). Her mood/affect were "okay, and she had no issues with her appearance, cognitive functioning, speech, thought process, thought content, or perception (Id.).

By May 2020, her depression was "mild" with intact memory and good insight (Tr. at 730). She was "cheerful and reported an improved attitude" (Tr. at 731). Later that month after missing an appointment to volunteer at a Food Bank at church, the Plaintiff "assured her [social worker] that her mood is stable," with her medication "helping improve her motivation and energy" (Tr. at 729). In June 2020, the Plaintiff had a generally normal mental status examination, and reported that she tolerated her medication well, had seen improvement in her sleep, and her symptoms were "manageable" with treatment (Tr. at 718-719). Further, she reported that "she [was] active in her church community and she volunteers locally to take lunches to home based schoolchildren during the COVID-19 pandemic" (Id.). She also had a "cheerful mood and affect" and was "enjoying her new puppy and other animals (Tr. at 1864).

In January 2021, the Plaintiff had a follow-up appointment complaining of difficulties with sleep, but her mental status examination was generally unremarkable, and her medication was

changed (Tr. at 645-646). She was referred for an examination for obstructive sleep apnea (Tr. at 640). In February 2021, the Plaintiff reported "90% improvement" in her symptoms, and once again had a generally unremarkable mental status examination (Tr. at 635-636). She further reported activities including walking her dog, undertaking home improvement projects, and being a caregiver to her mother (Tr. at 624).  In June 2021, the Plaintiff again reported improvement in her symptoms with medication, and described her symptoms as "mild" and "manageable" (Tr. at 1394). The Plaintiff's mood/affect were "OK," and she had normal cognitive functioning, appearance, motor function, thought process and content, no perceptual disturbances, and fair/adequate insight and judgment (Tr. at 1395). In September 2021, the Plaintiff's mental status was again normal (Tr. at 962, 1257-1258). That same month, the Plaintiff's mother passed, resulting in an increase in symptoms with difficulty adjusting with grief (Tr. at 2548). However, her symptoms improved with treatment, and she reported her symptoms were "manageable" in March 2022 (Tr. at 2524).

Physical Impairments:

Over the relevant period, the Plaintiff complained of back pain that was initially treated with various medications in April and May 2020 (see, e.g., Tr. at 729, 731-732).  In July 2020, the Plaintiff reported that she attended physical therapy, but "only attended 6 visits and then no showed or [cancelled] 5 visits" resulting in "discharge[] due to poor attendance" (Tr. at 714-715). She also treated with an at-home use of a TENS unit, but it was discontinued due to lack of effectiveness and the Plaintiff opted to treat with ibuprofen (Tr. at 712).

In May 2021, the Plaintiff had a physical consultative examination (Tr. at 885-890). The Plaintiff had some pain with range of motion and a straight leg raise, but was observed ambulating

with a normal gait, did not require a handheld device, was stable at station, and comfortable in the sitting position (Tr. at 886-887). She had 5/5 strength in her upper extremities and grip but had diminished strength in her knees and hip flexors (Tr. at 888). Additionally, an x-ray was performed on her left ankle that reflected mild osteoarthritis (Tr. at 891).

In June 2021, the Plaintiff had an x-ray of her lumbar spine, indicating marked facet arthrosis at the L4-5 and L5-S1, but otherwise mild to moderate issues (Tr. at 909-910). She also had an MRI of her lumbar spine in July 2021, which showed facet joint arthrosis, slight retrolisthesis of L2-3 and L3-4 with an anterolisthesis of L4-5, mild disc bulging at the L2-3 and L4-5 levels resulting in neural foraminal encroachment, and no focal disc herniation, nerve root impingement, or significant central spinal canal stenosis (Tr. at 975-976). She began a weight loss program that same month, where she reported improvement in her back pain from chiropractic care, walking three to four days per week, walking up and down the stairs all day long, and staying busy cleaning her kitchen and reorganizing her pantry (Tr. at 1381).

Later in July 2021, the Plaintiff underwent a VA evaluation for benefits, alleging service-connected issues with her back and lower extremities. Diagnostic images revealed both ankles had calcaneal spur but no acute osseous abnormality, and images of her knees, hips, and shoulders revealed mostly mild to no issues (Tr. at 1060-1066). Additionally, in December 2021, the Plaintiff was evaluated by a podiatrist due to bilateral foot pain (Tr. at 2406). X-rays of her feet revealed calcaneal spurring, osteophytes, and some mild degenerative changes (Tr. at 2412). An MRI of her left ankle showing an attenuated anterior talofibular ligament with no tendon abnormality, arthrosis between navicular and medical cuneiform, calcaneal spurring, normal plantar fascia, and a suspected ganglion cyst (Tr. at 2614). On examination, she had full muscle strength and stable

gait (Tr. at 2410-2411). In April 2022, the Plaintiff began pain management for her back pain, where she walked with no assistance and had normal strength in her lower extremities (Tr. at 2625). She received injections, resulting in temporary improvement (Tr. at 2618). In October 2022, an MRI of the Plaintiff's left ankle showed mild Achilles tendinosis, a partial-thickness split tear of peroneus brevis tendon, and degenerative arthrosis, attenuated anterior talofibular ligament, small-volume subtalar joint effusion, and degenerative arthrosis of the midfoot (Tr. at 2707-2708).

Medical Opinion Evidence:

State agency medical consultant Atiya M. Lateef, M.D., found at the initial level of review that the Plaintiff could lift 20 pounds occasionally and ten pounds frequently, as well as sit for six hours and stand/walk for six hours in an eight-hour workday (Tr. at 170-171). She further found that the Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. at 171). Finally, she found that Plaintiff should avoid concentrated exposure to cold, vibration, pulmonary irritants, and hazards (Id.). On reconsideration, James B. Smith, M.D., also found that the Plaintiff could lift 20 pounds occasionally, ten pounds frequently, and could sit for six hours in an eight-hour workday, but the Plaintiff could stand/walk for only four hours in an eight-hour workday (Tr. at 180-181). Dr. Smith also found the Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, and determined that she should avoid concentrated exposure to cold, wetness, and vibration (Tr. at 181).

State agency psychological consultants G. David Allen, Ph. D., and Karl G. Hursey found that the Plaintiff had no severe mental impairments (Tr. at 169, 179-180).

Kristen Silenski, DPM, the Plaintiff's podiatrist, opined that the Plaintiff could sit for about eight hours and stand for about four hours in an eight-hour workday (Tr. at 2702). She opined that

the Plaintiff would need to rest one to two times per shift for approximately ten minutes, could lift less than ten pounds, and would miss approximately one day per month due to her impairments (Id.).

Mabel Wright, PA-C, the Plaintiff's evaluator for VA benefits, opined that the Plaintiff could not perform "prolonged walking or standing," "high impact tasks such as running or jumping," and had "limited ability to go up and down stairs" (Tr. at 1325, 1351, 2086, 2113).[2]

**The Plaintiff's Function Reports:**

In her function report, she stated that her back pain limits her to standing for only five minutes, has to readjust after sitting for five minutes, and could walk approximately ten feet before needing five minutes rest (Tr. at 343, 348).  She reported issues with her personal care and needed reminders for grooming and medicine, but she could prepare meals and perform some housework (Tr. at 345-346). She also reported some hobbies such as watching television, cross stitching, and crocheting, as well as engaging in social activities with her daughter (Tr. at 347).

**The Administrative Hearing:**

<u>Plaintiff's Testimony:</u>

The Plaintiff testified that due to her mental impairments she was unable to think clearly, had difficulty with sleep, and struggles to leave her room (Tr. at 46-48). Regarding her physical impairments, she testified that she experiences pain in her back that radiates down her legs, and that she has knee issues and ankle problems that makes it difficult to walk (Tr. at 49-50). She further testified that she has issues with her hands that limit her ability to hold objects (Tr. at 51).

---

[2] It is noted that the VA disability assessment regarding the Plaintiff's "Ankle Conditions" and "Knee and Lower Leg" was provided in July 13, 2021.

Vocational Expert's Testimony:

The vocational expert categorized the Plaintiff's past work as sedentary, skilled work (Tr. at 57). In response to the ALJ's hypothetical scenario including the aforementioned limitations in the controlling RFC, *supra*, the vocational expert testified that the hypothetical individual would be capable of performing the Plaintiff's past work (Tr. at 58). The ALJ then asked whether the hypothetical individual would be limited to sedentary work with the same limitations, and the vocational expert answered the individual could still perform the Plaintiff's past relevant work. Finally, in response to a hypothetical that the individual was limited to sedentary work, including the same limitations as before, but further limited to performing simple work and not involving fast-paced production requirements and can involve no greater than occasional changes in a routine work setting, the vocational expert testified that the Plaintiff's past work would be eliminated, but the hypothetical individual could perform other sedentary unskilled jobs (Tr. at 59).

## Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

14

is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**<u>Analysis</u>**

<u>The Absence of Mental Limitations in the RFC Assessment:</u>

The RFC determination is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite her functional limitations. See 20 C.F.R. § 404.1545(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See <u>Id</u>. § 404.1546(c); see also <u>Id</u>. § 404.1520c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. <u>Id</u>. § 405.1545(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

There is no dispute between the parties as to the ALJ's finding that the Plaintiff's mental impairments were non-severe, and that she had mild limitations in all four areas of mental functioning.[3] (Tr. at 22-23) Notwithstanding the Plaintiff's contention that the ALJ failed to

---

[3] 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00F(2)(b) provides that a "mild limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."

incorporate these limitations into the RFC assessment, this District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. See *Elaine M. v. Kijakazi*, No. 3:23-cv-00328, 2023 WL 6368980, at *8 (S.D. W. Va. Sept. 7, 2023), *report and recommendation adopted sub nom.*, 2023 WL 6368228 (S.D. W. Va. Sept. 28, 2023) ("[T]his District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment") (citing *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021); *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D. W. Va. May 21, 2021) (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (noting even a claimant's "moderate limitation in concentration, persistence, or pace at step three" may not "affect [her] ability to work" and thus "does not translate into a limitation in [her RFC]")), *report and recommendation adopted*, 2021 WL 5230987 (S.D. W. Va. Nov. 9, 2021); see also, *Perry v. Colvin*, No. 2:15-cv-01145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) ("[A]lthough some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations . . ."); Britt v. Saul, 860 Fed.Appx. 256, 262 (4th Cir. 2021) ("While the administrative law judge did not specifically address [the plaintiff's non-severe impairments] in the residual-functional-capacity analysis, neither our caselaw nor the regulations explicitly require this. The judge is only required to *consider* these non-severe impairments.") (*emphasis* in original).

        In this case, the ALJ clearly addressed the Plaintiff's non-severe mental impairments when

assessing her RFC: the ALJ noted that the Plaintiff testified she has posttraumatic stress disorder, cannot think clearly, has insomnia, has issues sleeping, rarely leaves home, and is angry and cries for "no reason." (Tr. at 26) Based on the evidence of record, the ALJ noted that "[d]espite alleging debilitating symptoms due to her physical *and mental* symptoms, the claimant has maintained varied and robust activities of daily living that are inconsistent with her claims of disability" (Tr. at 30) (*emphasis* added). In support of this conclusion, the ALJ noted that the Plaintiff reported her sleep schedule had changed since caring for her mother during cancer treatment, and that the Plaintiff dropped out of counseling in order to focus on caring for her mother. (Tr. at 30, 2514)[4] Additionally, in her discussion of the evidence in support of the RFC determination, the ALJ observed that the Plaintiff "set a goal to clear clutter in her basement so that she could access her elliptical trainer a couple of days a week when she was not able to go for a walk" and that she was also interested in incorporating Tai Chi in her morning routine. (Tr. at 30, 1381-1382)[5] Additionally, the ALJ noted that a treatment record from March 2020 indicated the Plaintiff was working from home for Blue Cross Blue Shield call center with hours from 7:45 a.m. to 4:30 p.m. (Tr. at 30, 754, 944)[6] Moreover, the ALJ noted that the Plaintiff testified that she babysat her grandchildren, ages 7, 5, 4, 1, and 18 months. (Tr. at 30) Notably, the ALJ acknowledged that both State agency mental consultants found the Plaintiff had no severe mental impairments and determined she had no more than mild limitations in all four areas of functioning. (Tr. at 31, 166-

---

[4] This record is dated January 2021.

[5] This record is dated July 2021.

[6] The ALJ's decision indicates this record is at page 1924, but is likely a scrivener's error, as the notation is actually on page 1923 in the Transcript.

173, 176-184) The ALJ found these opinions persuasive because they were supported by and consistent with the evidence that showed the Plaintiff was "pleasant and cooperative and had a normal mood" (Tr. at 31, 1682, 1942, 1937, 1918, 1893, 1812, 1649, 1617, 1596, 1880, 1874, 1862, 1572, 1981, 2513, 2162, 2289)[7], "and that in general, there was a lack of significant mental health findings." (Tr. at 31)

In sum, the undersigned **FINDS** that the ALJ supported his conclusions that the Plaintiff's non-severe mental impairments required no corresponding RFC limitations, and discharged his duties under Section 404.1545(a) and SSR 96-8p, as he not only discussed all the relevant evidence as it related to the Plaintiff's mild limitations, but he also adequately explained why those restrictions were not included in the RFC assessment. Thus, this Court need not have to "guess about how the ALJ arrived" at this conclusion, allowing for meaningful judicial review. See Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).[8]

Failure to Expressly Consider Medical Source Opinion:

As an initial matter, the Plaintiff does not explain how the omission of Ms. Mabel's opinion from the written decision prejudices her claim, notwithstanding the fact it is her burden to do so, as noted *supra*. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (explaining that Plaintiff, as the

---

[7] The majority of these records concern progress notes from the Louis A. Johnson VA Medical Center and are dated from September 26, 2019 through August 30, 2020 – the Plaintiff presented to the emergency department on August 19, 2020 for umbilical hernia repair (See, e.g., Tr. at 1990). The remaining records are from the VA and dated August 19, 2020, September 13, 2021, and March 15, 2022.

[8] This Court had reached the same conclusions in other cases before it where the issue of non-severe mental impairments were addressed in the RFC analysis. See *Kevin R. v. Kijakazi*, No. 2:22-cv-00351, 2023 WL 5282400 (S.D. W. Va. July 31, 2023), *report and recommendation adopted*, No. 2:22-cv-00351, 2023 WL 5279652 (S.D. W. Va. Aug. 16, 2023); *Laura S. v. Kijakazi*, No. 2:22-cv-00272, 2023 WL 6144853, at *8 (S.D. W. Va. Aug. 31, 2023), *report and recommendation adopted*, No. 2:22-cv-00272, 2023 WL 6142362 (S.D. W. Va. Sept. 20, 2023).

moving party, bears the burden of showing that any legal error would have changed the Commissioner's decision). Regardless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]' " Reid v. Commissioner of Social Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2006) (*per curiam*)); see also *Call v. Berryhill*, Civil Action No. 2:17- CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018) ("The Court finds the ALJ's summaries and explanations sufficiently display a consideration of all the evidence, including that cited by Plaintiff. While this evidence was not explicitly mentioned, the holding in Reid applies to the instant case and a failure to specifically mention a single CR scan which noted `mild soft tissue swelling' in a transcript of well over 800 pages does not constitute `evidence to the contrary.' ") (Chambers, J.). While the ALJ may not have specifically mentioned Ms. Mabel's opinion, he stated that he considered all the evidence of record. See Tr. at 19 ("After consideration of all the evidence. . ."); Tr. at 21 ("After consideration of the entire record. . ."; and Tr. at 25 ("After consideration of the entire record. . ."). Having so stated, this court should "take [him] at [his] word." Reid, 769 F.3d at 865.

In any event, the undersigned is hard-pressed to understand how Ms. Mabel's opinion that the Plaintiff be limited from "prolonged walking or standing" or "high impact tasks such as running or jumping" or that the Plaintiff had a "limited ability to go up and down stairs" even remotely impacts the ALJ's determination that she remained capable of performing her past relevant sedentary work. (Tr. at 33-34) Sedentary work requires only "occasional" standing and walking, with "occasionally" defined as "very little up to one-third of the time" and "generally total no more than about two hours of an eight-hour workday." Social Security Ruling (SSR) 83-10 1983 WL 31251 at *5. Neither the insurance clerk/customer service representative nor the travel clerk jobs

require the activities Ms. Mabel determined she was precluded from performing per the descriptions pursuant to the Dictionary of Occupational Titles. See Insurance Clerk, DOT 214.362-022, 1991 WL 671871; Reservation Clerk, DOT: 238.362-014, 1991 WL 672203. To the extent the ALJ erred by not explicitly addressing Ms. Mabel's opinion in his decision, the undersigned **FINDS** any such error is harmless. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (a court should affirm the Commissioner's decision, even where there is error, if there is "no question that [the ALJ] would have reached the same result notwithstanding his initial error.")

Finally, the undersigned **FINDS** the final decision of the Commissioner denying benefits is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request for an award of benefits or remand (ECF No. 5), **GRANT** the Defendant's request to affirm the decision (ECF No. 6), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which

objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: November 2, 2023.



Omar J. Aboulhosn
United States Magistrate Judge